**BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP**
Alan R. Plutzik (State Bar No. 77785)
Michael S. Strimling (State Bar No. 96135)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA  94598
Telephone:  (925) 945-0200
Facsimile:  (925) 945-8792

**LEVI & KORSINSKY, LLP**
Joseph Levi, Esq.
Juan E. Monteverde, Esq.
30 Broad Street, 15th Floor
New York, New York 10004
Tel:  212-363-7500
Fax: 212-363-7171

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUISE GARCIA, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | **Case No:4:10-cv-00238** |
| v. ) ) ) | **FIRST FEDERAL CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS, AND FOR VIOLATION OF STATE LAW BREACHES OF FIDUCIARY DUTY** |
| DARIN BILLERBECK, FEDERICO FAGGIN, RICHARD SANQUINI, ROBIN ABRAMS, DAVID ELKINS, ERIC SINGER, ZILOG, INC.,  IXYS CORPORATION, and ZANZIBAR ACQUISITION, INC., ) ) ) ) ) ) ) | |
| Defendants. ) ) ) | **JURY TRIAL DEMANDED** |

Plaintiff, by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**INTRODUCTION**

1.     Plaintiff brings this action on behalf of the public stockholders of ZiLOG, Inc. ("ZiLOG" or the "Company") against Defendants, ZiLOG and its Board of Directors alleging violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule

- 1 -

14a-9 promulgated thereunder by the United States Securities and Exchange Commission ("SEC") as well as state common law claims for breach of fiduciary duty.

2.     Specifically, this action arises out of the Company's attempt to sell the Company to Defendants IXYS Corporation and Zanzibar Acquisition, Inc. (collectively "IXYS") (the "Proposed Transaction") by means of an unfair process and for an unfair price of $3.58 per share in cash for each share of ZiLOG common stock and have attempted to solicit shareholder proxies in support of the Proposed Transaction with a proxy that contains materially misleading information and omissions of material fact. **The Proposed Transaction is scheduled for a shareholder vote on February 17, 2010 and is valued at approximately $62.4 million.**

3.     Accordingly, this action seeks equitable or rescissory damages resulting from the violations alleged above.

### JURISDICTION AND VENNUE

4.     The claims asserted herein arise under Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Delaware common law.   This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] and 28 U.S.C. § 1331. The Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

5.     Venue is proper in this District because many of the acts and practices complained of herein occurred in substantial part in this District, including the dissemination of the materially misleading statements and omissions alleged herein.   In addition, ZiLOG maintains its principal executive offices in San Jose, California.

### PARTIES

6.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of ZiLOG.

- 2 -

7.      ZiLOG is a corporation organized and existing under the laws of the State of Delaware. It maintains its principal corporate offices at 6800 Santa Teresa Boulevard, San Jose, California 95119, and designs, develops, tests, markets, and supplies microprocessor and microcontroller semiconductor products. Its products enable customers to integrate peripheral functions, such as network connectivity, timers, serial communication, analog to digital conversion, and display drivers on its micrologic devices. The Company also provides serial communication controllers, modems, IrDA transceivers, TV display controllers, and personal computer peripheral controllers.

8.      Defendant Darin Billerbeck ("Billerbeck") has been the President, Chief Executive Officer, and a director of the Company since 2007.

9.      Defendant Federico Faggin ("Faggin") has been Chairman of the Board of the Company since 2007 and has been a director since 2002.

10.     Defendant Richard Sanquini ("Sanquini") has been a director of the Company since 2002.

11.     Defendant Robin Abrams ("Abrams") has been a director of the Company since 2007.

12.     Defendant David Elkins ("Elkins") has been a director of the Company since 2004.

13.     Defendant Eric Singer ("Singer") has been a director of the Company since 2008.

14.     Defendants referenced in ¶¶ 7 through 13 are collectively referred to as Individual Defendants and/or the ZiLOG Board. The Individual Defendants as officers and/or directors of ZiLOG, have a fiduciary relationship with Plaintiff and other public shareholders of ZiLOG and owe them the highest obligations of good faith, fair dealing, loyalty and due care.

15.     Defendant IXYS Corporation is a Delaware corporation with its headquarters located in California and is a multi-market integrated semiconductor company that specializes in the

FIRST FEDERAL CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS, AND FOR VIOLATION OF STATE LAW BREACHES OF FIDUCIARY DUTY

development, manufacture, and marketing of power semiconductors, advanced mixed signal integrated circuits (ICs), application specific integrated circuits (ASICs), and systems and radio frequency semiconductors.

16. Defendant Zanzibar Acquisition, Inc. is a Delaware corporation wholly owned by IXYS Corporation that was created for the purposes of effectuating the Proposed Transaction.

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

17. By reason of Individual Defendants' positions with the Company as officers and/or Directors, they are in a fiduciary relationship with Plaintiff and the other public shareholders of ZiLOG and owe them, as well as the Company, a duty of highest good faith, fair dealing, loyalty and full, candid and adequate disclosure, as well as a duty to maximize shareholder value.

18. Where the officers and/or Directors of a publicly traded corporation undertake a transaction that will result in either: (i) a change in corporate control; (ii) a break up of the corporation's assets; or (iii) sale of the corporation, the Directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium.   To diligently comply with their fiduciary duties, the Directors and/or officers may not take any action that:

     (a)    adversely affects the value provided to the corporation's shareholders;

     (b)    favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

     (c)    contractually prohibits them from complying with their fiduciary duties;

     (d)    will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

- 4 -

(e)     will provide the Directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

19.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as Directors and/or officers of ZiLOG, are obligated to refrain from:

(a)     participating in any transaction where the Directors or officers' loyalties are divided;

(b)     participating in any transaction where the Directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders.

20.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty, good faith and independence owed to Plaintiff and other public shareholders of ZiLOG, or are aiding and abetting others in violating those duties.

21.     Defendants also owe the Company's stockholders a duty of candor, which includes the disclosure of all material facts concerning the Proposed Transaction and, particularly, the fairness of the price offered for the stockholders' equity interest.   Defendants are knowingly or recklessly breaching their fiduciary duties of candor by failing to disclose all material information concerning the Proposed Transaction, and/or aiding and abetting other Defendants' breaches.

## CONSPIRACY, AIDING AND ABETTING AND CONCERTED ACTION

22.     In committing the wrongful acts alleged herein, each of the Defendants has pursued, or joined in the pursuit of, a common course of conduct, and acted in concert with and conspired with one another, in furtherance of their common plan or design.   In addition to the wrongful

- 5 -

conduct herein alleged as giving rise to primary liability, the Defendants further aided and abetted and/or assisted each other in breach of their respective duties as herein alleged.

23.     During all relevant times hereto, the Defendants, and each of them, initiated a course of conduct which was designed to and did: (i) permit IXYS to attempt to eliminate the public shareholders' equity interest in ZiLOG pursuant to a defective sales process, and (ii) permit IXYS to buy the Company for an unfair price. In furtherance of this plan, conspiracy and course of conduct, Defendants, and each of them, took the actions as set forth herein.

24.     Each of the Defendants herein aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions, as particularized herein, to substantially assist the commission of the wrongdoing complained of, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to, and furtherance of, the wrongdoing.  The Defendants' acts of aiding and abetting included, *inter alia*, the acts each of them are alleged to have committed in furtherance of the conspiracy, common enterprise and common course of conduct complained of herein.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action on her own behalf and as a class action on behalf of all owners of ZiLOG common stock and their successors in interest, except Defendants and their affiliates (the "Class").

26.     This action is properly maintainable as a class action for the following reasons:

(a)     the Class is so numerous that joinder of all members is impracticable.  As of December 16, 2009, ZiLOG has approximately 17.31 million shares outstanding.

(b)     questions of law and fact are common to the Class, including, inter alia, the following:

- 6 -

    (i)    Have the Individual Defendants misrepresented and omitted material facts in violation of Section 14(a) of the Exchange Act;

    (ii)    Have the Individual Defendants breached their fiduciary duties owed by them to Plaintiff and the others members of the Class;

    (iii)    Are the Individual Defendants, in connection with the Proposed Transaction of ZiLOG by IXYS, pursuing a course of conduct that does not maximize ZiLOG's value in violation of their fiduciary duties;

    (iv)    Have the Individual Defendants misrepresented and omitted material facts in violation of their fiduciary duties owed by them to Plaintiff and the other members of the Class;

    (v)    Have ZiLOG and IXYS aided and abetted the Individual Defendants' breaches of fiduciary duty; and

    (vi)    Is the Class entitled to injunctive relief or damages as a result of Defendants' wrongful conduct.

(c)    Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.

(d)    Plaintiff's claims are typical of those of the other members of the Class.

(e)    Plaintiff has no interests that are adverse to the Class.

(f)    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for Defendants.

(g)    Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

## SUBSTANTIVE ALLEGATIONS

27.    Prior to the recession and the general financial turmoil that began in late 2008, ZiLOG's stock had been trading at over $4.20 per share in 2008.  ZiLOG saw its stock price take a hit in late 2008 and 2009 likely due to the recession and general turmoil in the financial markets.

28.    ZiLOG, however, has since rebounded and is poised for substantial growth.

29.    On February 19, 2009, the Company announced that it had sold its assets from its universal remote control hardware and secure transaction businesses for $31 million in cash.  As stated in the press release announcing the sale, the sale improved the Company's financial structure and liquidity, and allowed the company to streamline operation, generate cash, and focus on continuing to innovate in their core microcontroller business:

> Transactions Enhance Zilog's Liquidity and Allow It to Focus on Innovating in Core Microcontroller Business
>
> SAN JOSE, Calif., Feb. 19 /PRNewswire-FirstCall/ -- Zilog, Inc. (Nasdaq: ZILG) announced today the sale for cash of certain of its assets to Maxim Integrated Products, Inc., and Universal Electronics Inc. (UEI). In a simultaneous closing, Maxim acquired technology, intellectual property and assets for Zilog's universal remote control hardware and secure transaction businesses, and UEI acquired technology, intellectual property and assets of Zilog's remote control and universal infrared (IR) database solution. The parties have cross-licensed technology and intellectual property to one another for purposes of the continued conduct of their respective businesses.
>
> The purchase price for these assets is approximately $31 million in cash, $3.1 million of which will remain in escrow for up to one year. After giving effect to payments for taxes, professional fees, employee related costs and other transaction costs and after deducting the escrow amount, Zilog will net approximately $22-24 million in net cash proceeds from these transactions. As of March 31, 2009, Zilog expects its ending cash balance (exclusive of the

- 8 -

escrow amount) to be between $31-34 million. Zilog's board of directors will first review the revised fiscal year 2010 operations plan prior to the determination of how that cash will be used.

"Zilog decided early last year to review a broad range of strategic alternatives to enhance shareholder value, and we believe these transactions have done so. *In addition to improving our financial structure and liquidity, they allow the company to streamline operations, generate cash and focus on continuing to innovate in our core microcontroller business,*" said Zilog Chief Executive Officer Darin Billerbeck. "Zilog built our universal remote control and secure transaction operations into successful businesses, and we are pleased that those businesses will realize their full potential with Maxim and UEI."

30.     On May 11, 2009, in a press release announcing the financial results for the quarter ending March 31, 2009, Defendant Billerbeck, the Company's Chief Executive Officer, commented on the successful sale of its universal remote control and secured transaction businesses and how the Company was financially strong and well-positioned for the future. As stated in the press release:

"The collapse of global demand in fiscal 2009 was arguably unprecedented and created economic challenges for all. Even in this uninviting environment, we made progress in our ongoing strategic review process with the successful completion of the sale of our universal remote control and secured transaction businesses. *This has in essence been a milestone year for us as we completed the right-sizing of the company, improved our financial strength and continued to expand our product portfolio,*" said Darin Billerbeck, Zilog's Chief Executive Officer. "We enter fiscal 2010 financially solid and strategically focused. We are aligned to our traditional core microcontroller business. *At the same time, we are excited with our opportunities to leverage our technologies and market knowledge into higher level system solutions. This should position us well as the global economy emerges from the current worldwide recession.*"

31.     On July 30, 2009, the Company announced financial results for the quarter ending June 27, 2009. Following the February sale of its universal remote control hardware and secure transaction businesses, the Company had revitalized itself, focused itself on new product

- 9 -

1  development, and positioned themselves well for the future. As stated in the press release

2  announcing the results:

> "Our opening quarter of the 2010 fiscal year highlighted
> profitability, sequential sales growth, increased cash and a positive
> book-to-bill ratio. Following the sale of the businesses in February,
> we have revitalized the company making it leaner with a
> significantly lower breakeven sales level. Coupled with a laser-
> focus on our new product development and our esteemed industry
> brand from 35 years of microcontroller history, we believe we are
> well positioned as the global economy recovers," said Darin G.
> Billerbeck, Zilog's president and chief executive officer.

32.   Success continued over the next quarter. On October 28, 2009, the Company

announced its results for the quarter ending September 26, 2009. Among the financial highlights,

the Company announced that:

- Net income for the quarter was $1.6 million, a 364% increase from the $353,000 net

    income reported in the prior quarter.

- Gross margin of $3.684 million, a 35% increase from the $2.715 million gross margin

    reported in the prior quarter.

- Net sales from continuing operations for the quarter were $8.1 million, a sequential

    increase of 12 percent from the prior quarter.

33.   In the press release announcing the results, Defendant Billerbeck, the Company's

President and Chief Executive Officer, commented on the Company's outstanding quarter:

> "In the second quarter of fiscal 2010, we continued the improved
> performance we achieved in the opening quarter of this fiscal year,
> as once again we recorded profitability, sequential sales growth,
> increased cash and a positive book-to-bill ratio. Our second fiscal
> quarter results exceeded our guidance, reflecting higher margins,
> lower spending and increased revenues-including a sizeable
> increase in licensing revenue," said Darin G. Billerbeck, Zilog's
> president and chief executive officer. "As a result, the second
> quarter was our third consecutive fiscal quarter of GAAP net
> income..."

34.     Perry J. Grace, the Company's Executive Vice President and Chief Financial Officer described how the Company was well-position for the future:

> "Our second quarter results reflected the benefits of our business rationalization, including a continued reduction in our overall spending. Our current cost structure scales to support revenue growth with minimal incremental spending. *With the stabilization in our business model and the strength of our balance sheet, we are well positioned to take advantage of improvements in the global economy*," said Perry J. Grace, Zilog's executive vice president and chief financial officer.

35.     Despite its recent strong performance and poise for growth, the Company agreed to enter into the Proposed Transaction.  In a press release dated December 7, 2009, the Company announced that it had entered into a merger agreement with IXYS, stating:

> Biel, Switzerland and San Jose, CA. December 7, 2009 — IXYS Corporation (NASDAQ: IXYS), a market leader in power semiconductors and specialized mixed signal IC products, today announced that it has entered into a definitive agreement to acquire Zilog, Inc. (NASDAQ: ZILG), a trusted supplier of application specific, embedded microcontroller units (MCUs) that are system-on-chip (SoC) solutions for industrial and consumer markets. Under the terms of the agreement, IXYS will acquire all of Zilog's outstanding common shares for $3.58 per share in cash, or approximately $62.4 million.    The acquisition is subject to the approval of Zilog shareholders and other customary closing conditions. The transaction is expected to be completed during the quarter ended March 31, 2010.

> The combination of the two companies with complementing technologies will allow IXYS and Zilog to leverage analog power management with digital control. Zilog has a focused MCU business with technologies that will complement IXYS' product portfolio. IXYS has a broad based and diversified range of products geared toward industrial, telecommunications, medical, automotive, alternative energy and consumer applications. By introducing MCUs that enable digital power management and embedded control, IXYS will be able to create more cost-effective system integration solutions for its diversified customer base.

36.     Stellar results one more time. On January 27, 2010, the Company announced its results for the quarter ending December 26, 2009.  Among the financial highlights, the Company announced that:

FIRST FEDERAL CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS, AND FOR VIOLATION OF STATE LAW BREACHES OF FIDUCIARY DUTY

- Net income was favorably improved by $11.2 for the fiscal 2010 nine-month period as compared to the comparable period in 2009.
- Gross margin of $3.684 million, a 35% increase from the $2.715 million gross margin reported in the prior quarter.
- Net sales from continuing operations for the quarter were $8.7 million, a sequential increase of 7 percent from the prior quarter.

37.     In the press release announcing the results, Defendant Billerbeck, the Company's President and Chief Executive Officer, commented positively on the Company's outstanding quarter:

> **"Zilog achieved its fourth consecutive quarter of profitability.**
> This was highlighted with sequential increases in sales, gross
> margins and cash. The financial results exceeded our previous
> guidance in both top and bottom line performance"

38.     Given the Company's recent stellar performance and future prospects, the consideration shareholders are to receive is inadequate. The Company has successfully revitalized itself following the sale of certain of its assets in February and is well positioned for the future.  In addition, the Company has over $2.00 per share in cash, and holds no debt. Further, at least one Wall Street analyst had a price target of $6.00 per share before the Proposed Transaction was announced.

39.     Accordingly, IXYS is picking up ZiLOG at the most opportune time, at a time when ZiLOG is poised for growth and its stock price is trading at a huge discount to its intrinsic value.

40.     Rather, the Individual Defendants entered into the Proposed Transaction to cash out their interests in the Company by taking advantage of significant change-in-control and acceleration and vesting benefits that accrued to them upon the sale of ZiLOG.

- 12 -

41.     For example, Defendant Billerbeck holds restricted shares of ZiLOG that, upon consummation of the Proposed Transaction, will no longer be subject to the restrictions and will be converted into a right to receive $3.58 per share. Upon consummation of the Proposed Transaction, Billerbeck will receive $179,290.00 by cashing out his previously restricted shares.

42.     In addition, each of the Individual Defendants holds unvested stock options that will automatically vest upon consummation of the Proposed Transaction. Upon consummation of the Proposed Transaction, Defendant Billerbeck will receive $35,483.19, Defendant Abrams will receive $22,982.00, Defendant Elkins will receive $21,845.00, Defendant Faggin will receive $22,074.00, Defendant Sanquini will receive $16,245.00, and Defendant Singer will receive $15,677.77 by cashing out their stock options.

43.     Moreover, pursuant to his change in control agreement with the Company, Defendant Billerbeck will be entitled to receive a lump sum payment equal to 18 months of his base salary if he is terminated without cause or resigns for good reason upon consummation of the Proposed Transaction.

44.     On December 7, 2009, the Company filed a Form 8-K with the United States Securities and Exchange Commission ("SEC") wherein it disclosed the operating Agreement and Plan of Merger for the Proposed Transaction (the "Merger Agreement"). In order to protect their self-serving interests, as part of the Merger Agreement, Defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait d'accompli* and ensure that no competing offers will emerge for the Company.

45.     By way of example, §4.3(a) of the Merger Agreement includes a "no solicitation" provision barring the Board and any Company personnel from attempting to procure a price in excess of the amount offered by IXYS. Despite the fact that they have locked up the Company and

- 13 -

1 bound it to not solicit alternative bids, the Merger Agreement provides other ways that guarantee
2 the only suitor will be IXYS.

3      46.    Pursuant to §4.3(c) of the Merger Agreement, should an unsolicited bidder arrive on
4 the scene, the Company must notify IXYS of the bidder's offer and the identity of the bidder.
5 Thereafter, pursuant to §5.2(c) of the Merger Agreement, should the Board determine that the
6 unsolicited offer is superior and notifies IXYS that it intends to accept such superior offer, IXYS is
7
8 granted four business days to amend the terms of the Merger Agreement to make a counter-offer so
9 that the competing bid is no longer considered a superior offer. IXYS is able to match the
10 unsolicited offer because it is granted unfettered access to the unsolicited offer, in its entirety,
11 eliminating any leverage that the Company has in receiving the unsolicited offer.

12      47.    In other words, the Merger Agreement gives IXYS access to any rival bidder's
13 information and allows IXYS a free right to top any superior offer. Accordingly, no rival bidder is
14
15 likely to emerge and act as a stalking horse for IXYS, because the Merger Agreement unfairly
16 assures that any "auction" will favor IXYS and piggy-back upon the due diligence of the foreclosed
17 second bidder.

18      48.    In addition, should the other bidder come unsolicited and overcome the "last look,"
19 the Merger Agreement provides that a termination fee of $1,900,000 million must be paid to IXYS
20 by ZiLOG if the Company decides to pursue said other offer, thereby essentially requiring that the
21 alternate bidder agree to pay a naked premium for the right to provide the shareholders with a
22 superior offer.
23

24      49.    Ultimately, the "no solicitation" clause, the ability for IXYS to match any unsolicited
25 offer and the termination fee illegally restrain the Company's ability to solicit or engage in
26 negotiations with any third party regarding a proposal to acquire all or a significant interest in the
27 Company. The circumstances under which the Board may respond to an unsolicited written bona
28

- 14 -

fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.  Likewise, these provisions also foreclose any likely alternate bidder from providing the needed market check of IXYS's inadequate offer price.

## THE MATERIALLY MISLEADING AND/OR INCOMPLETE PROXY STATEMENT

50.     On December 29, 2009, the Company filed a Schedule 14A Proxy Statement (the "Proxy") with the SEC in connection with the Proposed Transaction.

51.     The Proxy fails to provide the Company's shareholders with material information and/or provides them with materially misleading information thereby rendering the shareholders unable to make an informed decision on whether to vote in favor of the Proposed Transaction.

52.     For example, the Proxy completely fails to disclose the underlying methodologies, projections, key inputs and multiples relied upon and observed by Oppenheimer & Co. Inc. ("Oppenheimer"), the Company's financial advisor, so that shareholders can properly assess the credibility of the various analyses performed by Oppenheimer and relied upon by the Board in recommending the Proposed Transaction.  In particular, the Proxy is deficient and should provide, *inter alia*, the following:

> (i)     The criteria utilized by Oppenheimer to select the companies used in its *Selected Companies Analysis.*

> (ii)    The 2009 and 2010 revenue and EBITDA multiples observed for each company (or at least the high/median/mean/low range) in the *Selected Companies Analysis.*

> (iii)   The reference ranges applied to ZiLOG's financial data to calculate its implied per share range in the *Selected Companies Analysis*, and the criteria used to select the reference ranges applied.

> (iv)    ZiLOG's 2009 and 2010 estimated revenue and EBITDA used in the *Selected Companies Analysis.*

- 15 -

(v)    The criteria utilized by Oppenheimer to select the companies used in its *Selected Precedent Transactions Analysis.*

(vi)    The transaction value and multiples observed for each company (or at least the high/median/mean/low range) in the *Selected Precedent Transactions Analysis.*

(vii)    The reference range applied to ZiLOG's financial data to calculate its implied per share range in the *Selected Precedent Transactions Analysis*, and the criteria used to select the reference range applied.

(viii)    The criteria for selecting terminal EBITDA multiples of 4.73x to 10.19x, terminal revenue multiples of 0.53x to 0.72x, and discount rates ranging from 20.0% to 25.0% used in the *Discounted Cash Flow Analysis.*

(ix)    The transactions used and premiums observed for each of the transactions used in its premiums analysis.

53.    In addition, the Proxy discloses one set of projections that was provided to IXYS and another set of projections that was provided to the Board and used by Oppenheimer. However, the two sets of projections vary significantly. Accordingly, the Proxy needs to disclose the factors and assumptions used by management to prepare each set of projections and the basis for their differences. Moreover, the Proxy should disclose whether any other potential party, other than IXYS, contacted by the Company during the sales process was provided with the Company's projections.

54.    Further, the Proxy omits material information regarding the financial advisor retained in connection with the Proposed Transaction. Specifically, the Proxy states that Oppenheimer was retained as the Company's financial advisor in the Proposed Transaction but fails to inform the shareholders the (i) the amount of fees ZiLOG paid Oppenheimer upon its engagement, the amount of fees payable upon delivery of Oppenheimer's fairness opinion, and the amount that is payable upon consummation of the Proposed Transaction; (ii) the services performed by Oppenheimer for ZiLOG in the past and the amount of compensation received for such services; and (iii) whether Oppenheimer has performed any services from IXYS for which it has or will

1  receive compensation, as well as whether Oppenheimer have any interest in the Company or IXYS.

2  It is material for shareholders to be informed as to any financial and economic interests

3  Oppenheimer or its clients have in the Proposed Transaction or in the parties involved that could be

4  perceived or create a conflict of interest. Moreover, the Proxy fails to disclose which financial

5  advisor the Company retained in 2008 to evaluate the proposal from Universal Electronics, Inc.

6  ("UEI"), and the reasons this advisor was not retained as financial advisor for the Proposed

7
   Transaction.

8

9      55.    The Proxy also fails to describe material information concerning the sales process,

10  including the criteria and process used to identify potential partners, and the discussions and

11  negotiations held with such partners. For example, the Proxy:

12          (i)     Fails to disclose the criteria used by the Company to select the 86
                    parties it contacted between July and September 2008, how many
13                  parties were strategic and how many parties were financial, and the
                    type of transaction and value of the five expressions of interest
14                  received as a result of such process.

15
            (ii)    Fails to disclose what the Company determined with respect to each
16                  of the five expressions of interest, and the reasons the Company
                    determined to sell its remote control business in December 2008 in
17                  light of the five expressions of interest.

18
            (iii)   Fails to disclose the criteria used to select the 11 parties contacted on
19                  October 26, 2009, how many parties were financial and how many
                    were strategic, and whether the 5 parties that had expressed interest in
20                  2008 were among the 11 contacted.

21
            (iv)    Fails to disclose whether IXYS provided any reasons to the Company
22                  that it was no longer interested in pursuing a transaction on May 27,
                    2008, and whether IXYS provided any reasons for its renewed interest
23                  in November 2008, and again in early May 2009.

24      It is absolutely necessary for shareholders to receive a Proxy that provides all material

25  disclosures related to the sales process in order for shareholders to be able to cast a fully informed

26
   decision regarding the Proposed Transaction.
27

28                                              - 17 -
   ─────────────────────────────────────────────────────────────
   FIRST FEDERAL CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS,
   AND FOR VIOLATION OF STATE LAW BREACHES OF FIDUCIARY DUTY

56.     The Proxy further neglects to provide shareholders with sufficient information to evaluate the pros and cons associated with the other strategic alternatives, other than the sale of the Company, including the values and risks associated with ZiLOG remaining as a stand-alone Company -- information which is vital to shareholders in deciding how to vote regarding the Proposed Transaction. In particular, the Proxy:

(i)     States that on June 4, 2009, the Board "also discussed other ways to return value to our stockholders, including a dividend or a share buyback," but it fails to disclose the reasons such alternatives were not pursued.

(ii)    States that on December 4, 2009, the Board reviewed the "risks and benefits of continuing as an independent entity," but it fails to disclose what those risks and benefits were, and the what the Board determined as a result of such discussion.

(iii)   States that the Board reviewed "other strategic alternatives available to ZiLOG, including remaining an independent company and the various risk factors associated with each alternative," but it fails to disclose such alternatives as well as the risks associated with them.

57.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## CLAIM FOR RELIEF

### COUNT I
### Violations of Section 14(a) of the Exchange Act
### and Rule 14a-9 Promulgated Thereunder

58.     Plaintiff repeats all previous allegations as if set forth in full herein.

59.     Defendants have issued the Proxy with the intention of soliciting shareholder support of the Proposed Transaction.

60.     Rule 14a-9, promulgated by SEC pursuant to Section 14(a) of the Exchange Act provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact,

- 18 -

1    or which omits to state any material fact necessary in order to make the statements therein not false

2    or misleading." 17 C.F.R. §240.14a-9.

3        61.    Specifically, the Proxy violates the Section 14(a) and Rule 14a-9 because it omits

4    material facts, including those set forth above. Moreover, in the exercise of reasonable care,

5    Defendants should have know that the Proxy is materially misleading and omits material facts that

6    are necessary to render them non-misleading.

7        62.    The misrepresentations and omissions in the Proxy are material to Plaintiff and the

8    Class, and Plaintiff and the Class will be deprived of their entitlement to cast a fully informed vote

9

10   if such misrepresentations and omissions are not corrected prior to the vote on the Proposed

11   Transaction.

12                            **COUNT II**
                       **Breach of Fiduciary Duty**
13               **(Against All Individual Defendants)**

14       63.    Plaintiff repeats all previous allegations as if set forth in full herein.

15       64.    As Directors of ZiLOG, the Individual Defendants stand in a fiduciary relationship to

16

17   Plaintiff and the other public stockholders of the Company and owe them the highest fiduciary

18   obligations of loyalty and care.   The Individual Defendants' recommendation of the Proposed

19   Transaction will result in change of control of the Company which imposes heightened fiduciary

20   responsibilities to maximize ZiLOG's value for the benefit of the stockholders and requires

21   enhanced scrutiny by the Court.

22       65.    As discussed herein, the Individual Defendants have breached their fiduciary duties

23   to ZiLOG shareholders by failing to engage in an honest and fair sale process and maximize

24

25   shareholder value.

26

27

28                                    - 19 -

66. The fiduciary duties of the Individual Defendants in the circumstances of the Proposed Transaction require them to disclose to Plaintiff and the Class all information material to the decisions confronting ZiLOG's shareholders.

67. As set forth above, the Individual Defendants have breached their fiduciary duty through materially inadequate disclosures and material disclosure omissions.

68. As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of ZiLOG's assets and will be prevented from benefiting from a value-maximizing transaction.

69. Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

70. Plaintiff and the Class have no adequate remedy at law.

**COUNT III**
**Aiding and Abetting**
**(Against ZiLOG and IXYS)**

71. Plaintiff repeats all previous allegations as if set forth in full herein.

72. As alleged in more detail above, ZiLOG and IXYS are well aware that the Individual Defendants have not sought to obtain the best available transaction for the Company's public shareholders. Defendants ZiLOG and IXYS aided and abetted the Individual Defendants' breaches of fiduciary duties.

73. As a result, Plaintiff and the Class members are being harmed.

74. Plaintiff and the Class have no adequate remedy at law.

//

- 20 -

FIRST FEDERAL CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS, AND FOR VIOLATION OF STATE LAW BREACHES OF FIDUCIARY DUTY

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, as follows:

(A)    declaring this action to be a class action and certifying Plaintiff as the Class representatives and their counsel as Class counsel;

(B)    declaring that the Proxy contained misleading statements of material fact and omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder and that ZiLOG and the Individual Defendants violated said provisions;

(C)    declaring that the Individual Defendants breached their fiduciary duties to disclose fully and fairly all material information within the Board's control in seeking shareholder approval of the transaction;

(D)    declaring that the Individual Defendants breached their fiduciary duties of good faith, trust, and loyalty in seeking shareholder approval of the transaction;

(E)    enjoining, preliminarily and permanently, the Proposed Transaction;

(F)    in the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(G)    directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(H)    awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(I)    granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

- 21 -

1

2    DATED:  January 27, 2010           **BRAMSON, PLUTZIK, MAHLER &**
                                        **BIRKHAEUSER, LLP**

3

4

5                                                       /s/
                                        _____
6                                       Alan R. Plutzik (State Bar No. 77785)
                                        Michael S. Strimling (State Bar No. 96135)
7                                       2125 Oak Grove Road, Suite 120
                                        Walnut Creek, CA  94598
8                                       Telephone:  (925) 945-0200
                                        Facsimile:  (925) 945-8792

9

10                                      -and-

11                                      **LEVI & KORSINSKY, LLP**
                                        Joseph Levi (to be admitted *pro hac vice*)
12                                      Juan E. Monteverde (to be admitted *pro hac vice*)
                                        30 Broad Street, 15th Floor
13                                      New York, NY  10004
                                        Tel:  212-363-7500
                                        Fax:  212-363-7171

14

15                                      Attorneys for Plaintiff

16

17

18

19

20

21

22

23

24

25

26

27

28
FIRST FEDERAL CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS,
AND FOR VIOLATION OF STATE LAW BREACHES OF FIDUCIARY DUTY